[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated February 23, 1999, the plaintiff wife, Donna A. Pratt, commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown and other relief. The defendant husband appeared pro se. Both parties appeared on February 28, June 1 and June 2, 2000 and presented testimony and documentary evidence. The court, after hearing the testimony and reviewing the exhibits, makes the following findings of fact.
The plaintiff wife (whose maiden name was Donna A. Dern) married the defendant husband on December 2, 1972, in Little Egg Harbor Township, New Jersey. She has resided continuously in the State of Connecticut for one year next preceding the date of the filing of this complaint. All statutory stays have expired. The parties have one minor child born to the plaintiff since the date of the marriage: William Wyllys Pratt VII, born March 7, 1985. No other minor child has been born to the plaintiff since the date of the marriage. The court further finds that no state or municipal agency has or is contributing to the support of the parties or their minor child.
The plaintiff is 51 years of age. Her physical condition is fair. On January 4, 2000 she was hospitalized for triple pneumonia and congestive heart failure. She was confined for over 2 weeks and continues under a doctor's care. She takes Zoloft for depression. She has poor self esteem. She has difficulty with the consumption of alcohol and lost her driver's license for 6 months for driving while intoxicated. She is in need of professional counseling. During the course of her marriage she was employed at various jobs, primarily on a part-time basis. She was a certified teacher and worked as a permanent K-12 substitute teacher from 1975-1978. The family moved frequently and the defendant wanted her to remain at home. Her part-time employment included driving a special education van, postal carrier and acted as an office manager in her husband's business. She will need further training to return to the CT Page 9322 workforce. She will be attending the Hartford College For Womens' "Women in Transition" program. She will also need computer training.
In 1995 she earned $14,400.00, in 1996 $9,421.00, in 1997 $633.00 and 1998 $2,018.00. She testified she quite often would not get paid when she worked for her husband. She has 5+ years of college.
The plaintiff received substantial inheritances from her family during the marriage. In the mid-70s she received $150,000.00 from her mother's estate. Her father also made payments to her from her sister's estate but the exact amount was difficult to determine. Most of the inheritances went for the payment of family expenses or to assist the defendant in his business. She also loaned her husbands' business $13,000.00 as evidenced by a promissory note of December 26, 1997. She claimed that the purpose of the loan was to help the plaintiff avoid bankruptcy. She also recalled that he made 1 or 2 payments as set forth in the note.
The defendant is 54 years of age and in good health. He received a bachelor's degree in 1968 from Monmouth College, New Jersey with a major in English. He has continued his education with additional training and certificate programs in economic development, etc. Since his graduation from college he has been employed in the advertising field working for firms in New Jersey, Pennsylvania, Massachusetts and Connecticut. In 1990 he started his own business called "Pratt Communications". This entity is basically out of business at the present time and the defendant is seeking other employment. From 1995 to the present the defendant has been the Economic Development Officer for the Town of East Granby which provides him with an annual salary of $19,000.00. He has been the primary wage earner for the family. His net income from Pratt Communications in 1995 was $33,821.00, 1996 $31,173.00, 1997 $37,982.00 and 1998 $23,771.00. The defendant also received an inheritance from his father who died in 1986. The total amount of the inheritance was $36,000.00 to $38,000.00 including the value of family heirlooms. The defendant disputes the purpose of the aforementioned loan of $13,000.00. He claims that the loan was structured by the parties accountant and that most of the funds were used for family expenses. The court finds his testimony credible on this issue.
Each of the parties testified at great length as to what they perceived to be the causes for the breakdown of the marriage. Essentially, the plaintiff claims that the defendant was physically and verbally abusive over a long period of time and constantly criticized her physical appearance. The defendant claimed that the plaintiff abused alcohol which had a substantial negative impact on her personally as well as the marriage. The plaintiff also offered testimony from Margaret Lee, a counselor from the Hartford Interval House which offers advocacy, CT Page 9323 counseling and support for battered women. The court finds that both of the parties contributed to the breakdown of the marriage with the greater responsibility being that of the defendant's.
The court further finds that the earning capacity of the plaintiff is $400.00 per week and that of the defendant $700.00 per week.
The court has considered all of the statutory factors concerning custody and visitation set out in Connecticut General Statutes §§46b-56, 46b-56a and 46b-59. The court has further considered all of the factors in Connecticut General Statutes §§ 46b-81, 46b-82, 46b-89 and46b-62 and other pertinent statutes, earnings and earning capacity differentials, causes for the breakdown of the marriage and the consequences of the financial awards set forth below. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown. It is furthered ordered that:
1. Custody.
a. The parties shall have joint legal custody of the minor child, William Pratt, VII. The child's primary place of residence shall be with the Defendant father.
b. Each of them shall continue having a full and active role in providing a sound, ethical, economic and educational environment for the child. These powers shall not be exercised for the purpose of frustrating, denying, or controlling in any manner the social development of the child by the other parent. The parents shall exert their best efforts to work cooperatively to develop future plans for the children consistent with the best interests of the child and to amicably resolve such disputes as may arise from time to time.
c. Recognizing the abiding need for the maintenance of a sense of dual parenthood for the benefit of the child and recognizing the deep and abiding love that each parent has for the child, the parties shall work together to maintain free, open and unhampered contact between the child and the parents.
d. Each of the parties shall allow the child to maintain free access with the other parent when the child is in residence with them, and foster a feeling of affection between the child and the other parent. Neither parent shall do anything which would estrange the child from the other parent, which would injure the opinion of the child as to the other parent or which would impair the natural development of the child's love and respect for each of the parents. CT Page 9324
2. Parenting Time
The plaintiff mother shall have unsupervised parenting time as follows:
a. For the period of time from July 26, 2000 forward:
 (i) Every Wednesday from 5:00 p.m. until 6:30 p.m. the mother shall be responsible for providing dinner for the child.
 (ii) Every Saturday or Sunday (the particular day to be established by the child's schedule) from 10:00 a.m. until 4:00 p.m.
b. The child shall spend Mother's Day with the mother and Father's Day with the father.
The times of such access to be dictated by the hours specified in the above schedule. This special time schedule shall supersede the regular parenting schedule.
c. The parties shall cooperate in ensuring that both parents have access to the child on all major holidays, including, but not limited to: New Year's Day, Easter, Thanksgiving, Christmas and Christmas Eve. This holiday schedule shall supersede the regular parenting schedule.
d. Father shall be responsible for all transportation to and from mother's parenting time.
e. Mother shall not consume any alcohol twenty four hours prior to, or during, any time she is parenting the minor child. The minor child shall, at his discretion, decline to exercise spending time with his mother if he feels that alcohol consumption has occurred and his safety is at issue.
f. The child's athletic events, practices, games, social activities and Alateen meetings shall be a priority in scheduling parenting time. The parties shall make all efforts to ensure that the child does not miss any of these events due to the exercise of parenting time.
g. The parties may agree to any other parenting time for mother, in excess of the above mentioned times, taking into consideration the needs and availability of the minor child.
3. Child Support
CT Page 9325
The mother shall pay child support in the amount of $30.00 per week, Such amount is a deviation from the strict application of the child support guidelines. The deviation is based on the child's best interest, other equitable factors, and the father's sole responsibility for transportation. The mother shall provide the father with her Federal and State income tax returns until she is employed on a full-time basis. The parties shall return to court, on either parties motion, for review of the child support order when the mother earns more than $170.00 per week. Nothing in this provision shall preclude either party from exercising their legal rights to modify child support based on a substantial change in circumstances.
4. Medical Insurance and Unreimbursed Expenses
a. Each party shall be responsible for their own health insurance and unreimbursed medical expenses.
b. The defendant shall provide medical and dental insurance for the minor child through the Connecticut "Husky" Program. The parties shall share equally any co-pays and unreimbursed medical expenses for the child.
5. Property Division
a. Marital House. The net proceeds from the sale of the marital residence located at 14 Fawnbrook Lane, Simsbury, Connecticut shall be shared equally by the parties.
"Net proceeds" shall be defined as the gross selling price less state and local conveyance taxes, real estate commissions, conveyancing attorney's fees, first and second mortgages, real estate taxes and any unpaid reasonable and necessary "fixing up" expenses.
b. Automobiles. The defendant shall retain the 1988 Pontiac Fiero, 1990 Mazda and the 1980 Spitfire free of any claims of the plaintiff. The plaintiff shall retain the 1996 Mercury and the 1987 Mitsubishi Montero free of any claim of the defendant. Each party shall fully cooperate with the other in any of the transfer documents necessary to effectuate such ownership.
c. Boats/Bikes. The plaintiff shall retain possession and ownership of her Dagger Verper Kayak and her Raleigh Grand Prix 10 speed bicycle. The defendant and the minor child shall retain possession and ownership of their respective kayaks and bicycles. CT Page 9326
d. Personal Property. As of the date of this decision the parties have removed their personal property from the marital home. If the parties are unable to agree to an equitable division of the personal property the court shall retain jurisdiction to make such division.
e. Bank Accounts, Stocks, Bonds, Mutual Funds, Cash Value of LifeInsurance, Deferred Compensation Plans. The parties shall relinquish any claims they may have to the other's bank accounts, stocks, bonds, mutual funds, cash value of life insurance and deferred compensation plans, as listed on their respective Financial Affidavits.
f. Minor Son's Security Accounts. The funds in the minor son's security accounts shall be utilized only by joint agreement and authorization from both parties.
g. Liabilities.
 (i) Each party shall assume and pay and hold harmless the other with respect to the debts listed on his or her Financial Affidavit as filed and the parties agree to hold each other harmless for any debts incurred by the other.
 (ii) All credit cards or accounts remaining in the joint names of the parties at the time of judgment shall be canceled.
h. Alimony. The defendant shall pay to the plaintiff alimony in the amount of $175.00 per week for a period of 2 years and $100.00 per week for an additional period of 8 years. Alimony shall be non-modifiable as to term.
i. Tax Exemptions. The defendant shall be entitled to claim the minor child as an exemption on all federal, state and local income tax returns.
j. Taxes. The parties shall file separate tax returns for 1999 and thereafter, and shall be solely and individually responsible for any refunds or taxes due. The defendant solely shall be entitled to claim the marital home taxes and mortgage interest as deductions in the 1999 and 2000 tax years.
k. Attorneys Fees. The defendant shall pay the amount of $3,000.00 to the plaintiff attorney out of the defendant's share of the proceeds of the marital home. Each party shall pay attorney Rhonda M. Marra $2,722.50 out of their respective share of the proceeds of the sale of the marital residence. CT Page 9327
John R. Caruso, J.